# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 CR 1092 | **DATE** | December 6, 2002 |
| **CASE TITLE** | | *United States v. Fady Igbara* | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion to Suppress Evidence and to Quash Arrest

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant Igbara's motion to suppress evidence and to quash arrest [20-1] is DENIED. Jury trial set to February 18, 2003 at 10:30 a.m. Time excluded to February 18, 2003 pursuant to 18 U.S.C. § 3161(h)(8)(B)(i)-(x-T1).

(11) ☒ [For further detail see order *attached to* ~~on the reverse side of~~ the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | DEC 09 2002 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | | |
| RTS | courtroom deputy's initials | | | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 01 CR 1092 |
| | ) | |
| FADY IGBARA | ) | |

**DOCKETED**
DEC - 9 2002

## MEMORANDUM AND ORDER

Defendant Fady Igbara is charged with possessing fifteen or more unauthorized devices with the intent to defraud in violation of 18 U.S.C. § 1029(a)(3). On December 11, 2001, Igbara was arrested at a hotel in Bedford Park, Illinois by Drug Enforcement Agency and Secret Service Agents. Pursuant to his arrest, the agents seized credit cards, credit reports, and various papers including handwritten notes of credit card numbers, currency amounts, names, social security numbers and dates of birth. Presently before the Court is Igbara's motion to suppress all items seized and quash his arrest pursuant to Federal Rule of Criminal Procedure 12(b)(3). For the reasons discussed below, Igbara's motion is denied in its entirety.

## I. Discussion

Igbara's Fourth Amendment arguments are two-fold: (i) he did not consent to the warrantless search, and (ii) the items seized do not fall within the scope of the "plain view" doctrine. We address these arguments in turn.

If a warrantless search is conducted on the basis of "consent," the intrusion is permissible under the Fourth Amendment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Consent to search, though it need not be knowing and intelligent, must be voluntary. *Id.* at 241. "The question of whether a particular encounter is voluntary is a factual one, dependent on the circumstances of each case." *United States v. Nobles*, 69 F.3d 172, 180 (7th Cir. 1995). In his

initial filing, Igbara proffered the following sequence of events: Two agents knocked on the door and said "Police. Open the door." Igbara responded through the closed door, "Why?" In turn, the agents replied, "We heard there's drugs in the room." Igbara cracked open the door several inches, with a security chain locked, and saw two plain-clothed agents. One of the agents had his badge in one hand and the other hand on his holstered gun. Again, the officers stated, "We heard there's drugs in the room." Igbara responded, "There's no drugs in this room." One of the agents then said, in a threatening tone, "Just open the door." Igbara, "petrified," opened the door and stated, "Go look for drugs. There's no drugs in here." (Def. Mot., p. 1-2.) Igbara signed an affidavit expressly adopting this chain of events. Accordingly, Igbara did not argue that he did not consent to the search, only that his consent was coerced.

At this Court's suppression hearing, however, Igbara testified that, although he opened the door, he *never* gave any verbal consent. (Transcript of Suppression Hearing, dated October 10, 2002 ("Tr.") at 13.) Further, Igbara testified that the agents said "Just open the f------door" instead of the expletive-free version alleged in Igbara's filing. (Tr. at 10.) On balance, the Court finds Igbara's initial written testimonial more credible. Igbara's written version was corroborated by Agent Marran and Detective Calderon who both testified that they did not enter the room until Igbara gave them verbal consent. (Tr. at 49, 87.) After carefully weighing the parties' written submissions and the defendant's and agents' testimony, the Court finds that Igbara, in saying, "Go look for drugs. There's no drugs in here," granted verbal consent to a search for narcotics.

The Court is still left with whether the agents' tone of voice and one agent's placing of his hand on his holstered gun constituted sufficient coercion to render the consent involuntary.

2

Here, too, the Court finds credible the agents' testimony that the request to enter the room was not overly threatening such as to render Igbara's consent involuntary. In addition, beyond the agents' request, no guns were drawn and no exacting pressure was exerted on Igbara to elicit his consent. Second, the one agent's hand on his holstered gun does not constitute coercion. *United States v. Baker*, 78 F.3d 1241, 1244 (7th Cir. 1996) (mere fact that officer had hand on gun does not render consent involuntary).

Turning to Igbara's second argument, the Court agrees with Igbara that the scope of the search was limited to drugs and related paraphernalia. *United States v. Lemmons*, 282 F.3d 920, 924 (7th Cir. 2002) (scope of consent is determined by the express object of the search). Igbara's consent, however, authorized a search of any area of the room in which drugs reasonably could be expected to be found. *United States v. Barnes*, 909 F.2d 1059, 1069 (7th Cir. 1990). Here, this included a search of papers on the desk and underneath the mattress. *Id.* (search for cocaine justified search of notebook).

Having established that the agents' access to the items seized had some prior Fourth Amendment justification, a second question remains – whether the agents had "probable cause to suspect that the item[s were] connected with criminal activity." *Illinois v. Andreas*, 463 U.S. 765, 771 (1983). To say that a plain view seizure requires "probable cause" is to say that the incriminating character of the evidence is "immediately apparent." *United States v. Carmany*, 901 F.2d 76, 77 (7th Cir. 1990). On this score, Igbara argues that the incriminating character was not immediately apparent by the initial two agents searching the papers. Although the agents did not know exactly what to make of the items (Tr. at 60), the Court finds that it was immediately apparent to the agents that the documents were potentially incriminating. *Id.* at 77-

3

78. ("The phrase immediately apparent does not imply that an unduly high degree of certainty as to the incriminatory character of the evidence is necessary for an application of the 'plain view' doctrine. The character of the property must be such as to give the officers probable cause to associate the property with criminal activity. . . . [The doctrine] does not demand any showing that such a belief be correct or more likely true than false. A practical, non-technical *probability* that incriminating evidence is involved is all that is required.") (emphasis added).

Even if the incriminating nature of the items was not immediately apparent to the DEA agents, that would not end the inquiry in Igbara's favor. The DEA agents were not the only agents to observe the papers. Indeed, the later-arriving Secret Service Agents, upon a cursory review of the papers, ascertained they were evidence of credit card fraud. (Tr. 63.) In assessing whether the agents had probable cause to seize the items, "where law enforcement authorities are cooperating in an investigation . . . the knowledge of one is presumed shared by all." *Andreas*, 463 U.S. at 771 n.5; *United States v. Cruz*, 834 F.2d 47, 51 (2d Cir. 1987) ("[I]t is appropriate to consider the collective knowledge of the all of the officers involved."). Once the knowledge of the Secret Service agents is imputed to the DEA agents, as the Supreme Court directs us to do, there can be no doubt that sufficient probable cause existed to seize the items.

Finally, Igbara appears to be challenging his arrest. This argument goes nowhere. After observing incriminating evidence of credit card fraud and identity theft, the agents had sufficient probable cause to arrest Igbara.

In sum, the Court finds that the testimony at the hearing established the following facts: (i) the agents entered and searched Igbara's hotel room with Igbara's consent, (ii) the items Igbara seeks to suppress were in the agents' plain view during their search, and (iii) the agents

4

had probable cause to believe that the items were incriminating evidence. On these facts, the Court concludes that the seizure of the items was lawful pursuant to the plain view exception to the Fourth Amendment's warrant requirement. Further, Igbara's arrest was supported by ample probable cause.

## II.    Conclusion

For the foregoing reasons, Igbara's motion to suppress evidence and to quash arrest [20-1] is DENIED.

DATE: 12 - 6 -02

Blanche M. Manning
United States District Judge